**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GREGORY BLADE, *et al.*** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-6645** |
| | : | |
| **SIG SAUER, INC.** | : | |
| | : | |

# MEMORANDUM

**KEARNEY, J.** **March 5, 2026**

The Pennsylvania General Assembly long ago granted out-of-state companies doing business in the Commonwealth the privilege to sue others in Pennsylvania courts if they register and consent to Pennsylvania jurisdiction. And conversely the General Assembly did not grant this privilege to companies doing business here but who chose not to register. A New Hampshire manufacturer chose to register in Pennsylvania as an out-of-state corporation twenty-four years ago apparently believing it did business here, consented to jurisdiction here, and gained the benefit of being able to sue others in Pennsylvania courts.

Two Pennsylvanians now claim this New Hampshire manufacturer's product harmed them. They sued the manufacturer here. Non-Pennsylvanian injured persons are also seeking relief in the same case. The manufacturer now moves to dismiss, arguing the law governing its Pennsylvania consent to jurisdiction two dozen years ago violates the Due Process Clause and Dormant Commerce Clause requiring we dismiss claims against it for lack of personal jurisdiction. It alternatively asks we dismiss as the Pennsylvanians filed this case in the wrong venue, sever the Pennsylvanians' claims from the non-Pennsylvanians, and then transfer the non-Pennsylvanians' claims to their home states so a variety of judges can address the same core issues at this early stage.

The Supreme Court rejected this due process argument almost three years ago relying on unanimous Supreme Court authority in effect when (and long before) the manufacturer registered in Pennsylvania. But the manufacturer implores us the time is now (three years later) for a different view of personal jurisdiction. It asks we find the Pennsylvania registration law violates the Due Process Clause as applied to it. It then goes a step further and asks we follow a single Justice's question as to whether Pennsylvania's registration law violates the Dormant Commerce Clause. We carefully studied these arguments mindful of binding precedent. We are not persuaded by either argument. We also find proper venue given personal jurisdiction over the manufacturer. We decline to sever and transfer these early-stage claims to other judges. We deny the manufacturer's motions to dismiss or sever.

## I. Alleged or sworn facts

New Hampshire citizen Sig Sauer, Inc. "designs and manufactures firearms for sale to military and commercial markets throughout the United States and internationally."[1] It markets and distributes its products through direct sales and dealers including in the Commonwealth.[2] Sig Sauer manufactures the P320 pistol.[3] It is a "single-action pistol" and "the most dangerous pistol sold in the United States market."[4] The P320 is "susceptible to unintended discharges."[5] Sig Sauer took advantage of Pennsylvania law applying to out-of-state companies doing business here by registering to do business in Pennsylvania as an out-of-state corporation in 2002 and consenting to personal jurisdiction in Pennsylvania courts.[6]

Pennsylvania resident Lydell Boanes purchased a Sig Sauer P320 pistol for personal use at an unpleaded time before May 11, 2025.[7] Mr. Boanes's P320 pistol "suddenly and unexpectedly discharged when he holstered the pistol" on May 11, 2025 and "[t]he bullet struck [Mr.] Boanes in his right thigh."[8]

United States Immigration and Customs Enforcement issued Pennsylvania resident Joshua Southard a P320 pistol at an unpleaded time before March 17, 2025.[9] Mr. Southard's P320 pistol "suddenly and unexpectedly discharged as he was holstering the pistol" on March 17, 2025 and "[t]he bullet struck [Mr.] Southard in his right thigh."[10]

Both Mr. Boanes and Mr. Southard sustained physical and emotional injuries as did the other persons seeking relief.[11]

## II. Analysis

Pennsylvania Messrs. Boanes and Southard and twenty-nine other allegedly injured persons sued Sig Sauer for negligence and product liability related to Sig Sauer's alleged misrepresentation and failures in the design, manufacturing, marketing, and sale of the P320 pistol.[12] Four of the thirty-one individuals also bring a breach of implied warranty claim and twenty additional individuals plead other causes of action.[13] Fifty-one individuals bring eighty-six separate claims in total.[14]

Sig Sauer moves to dismiss Messrs. Boanes and Southard's Complaint for lack of personal jurisdiction and improper venue.[15] It argues we lack personal jurisdiction over Sig Sauer because Pennsylvania's "consent-by-registration" statute violates the Dormant Commerce Clause.[16] It also asserts the registration statute is unconstitutional under the Due Process Clause as applied to Sig Sauer in this case involving two Pennsylvania claimants among others.[17] Sig Sauer argues our lack of personal jurisdiction means venue is improper as well.[18]

Pennsylvanians Boanes and Southard and other allegedly injured persons counter Sig Sauer consented to general personal jurisdiction when it registered to do business here in 2002 as an out-of-state corporation.[19] They argue the Supreme Court's 2023 holding in *Mallory* controls requiring we find Pennsylvania's consent-by-registration statute does not violate either the Due

Process Clause or the Dormant Commerce Clause.[20] They contend venue is proper because registration supplies personal jurisdiction.[21]

We find Sig Sauer consented to general personal jurisdiction. We find Pennsylvania's registration statute does not violate the Due Process or Dormant Commerce Clause as applied to Sig Sauer. Venue is proper given personal jurisdiction. We also find no basis to today sever and transfer.

**A. Sig Sauer consented to jurisdiction by registration available to companies believing they are doing business in Pennsylvania.**

We begin with Pennsylvania's consent-by-registration statute in place both when Sig Sauer registered to do business and today. The Pennsylvania General Assembly has long mandated an out-of-state corporation "doing business" in the Commonwealth must register with the Department of State.[22] The General Assembly through the registration statute "does not define 'doing business.' Instead, it enumerates thirteen activities that do *not* constitute doing business."[23] Activities not constituting doing business for the purposes of registration include "selling through independent contractors" and "doing business in interstate or foreign commerce."[24] Regular conduct in interstate commerce "does not require registering to do business."[25] By contrast, "any conduct more regular, systematic, or extensive than that described in [the statute] constitutes doing business and requires" registration.[26] "Typical conduct requiring registration includes maintaining an office to conduct local intrastate business, selling personal property not in interstate commerce, entering into contracts relating to the local business or sales, and owning or using real estate for general purposes."[27]

A registered out-of-state corporation "enjoy[s] the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties now in force or hereafter imposed on domestic entities."[28] Registration permits Pennsylvania courts to

"exercise general personal jurisdiction" over the out-of-state corporation in the same manner as over a domestic corporation.[29] The out-of-state corporation must appear in such courts on "any cause of action."[30]

And, on balance, not registering to "do business" seemingly has only one downside: the out-of-state corporation not registered here may not sue in Pennsylvania courts.[31] But "closing Pennsylvania courts to suits brought by [an out-of-state corporation] that should have registered is not a punitive one."[32] Failure to register "does not impair the validity of a contract or act of the [out-of-state corporation]" or "preclude it from defending an action or proceeding in this Commonwealth."[33] It also does not waive "any liability shields applicable under the [corporation]'s organic law."[34]

Sig Sauer apparently believed it was doing business here and chose to register to do business in Pennsylvania as an out-of-state corporation in 2002.[35] It has not withdrawn its registration.[36] But it now swears it "has no operations in" Pennsylvania although it never changed its registration required for an out-of-state corporation doing business here.[37] It does not have a physical presence.[38] It owns no property, leases no property, maintains no corporate offices, and does not "engage in systematic corporate or business activity."[39] Four employees reside in the Commonwealth out of more than 3,200 nationwide.[40] Sig Sauer now swears it "does not have a history of affirmatively filing lawsuits in Pennsylvania [c]ourts."[41]

### B. The registration law does not violate Sig Sauer's due process rights.

Sig Sauer argues exercising general personal jurisdiction under Pennsylvania's registration statute invoked when a corporation believes it is doing business here still violates the Due Process Clause as applied to it.[42] It emphasizes it owns no property, manages no operations, and cannot be described as "at home" in the Commonwealth.[43] It contends subjecting an out-of-

state corporation with no extensive operations here to general jurisdiction based solely on registration offends principles of fairness and federalism.[44] Sig Sauer concludes our exercise of personal jurisdiction would exceed constitutional limits.[45] We disagree.

Both parties rely on the Supreme Court's guidance almost three years ago in *Mallory v. Norfolk Southern Railway Company*.[46] The Court in *Mallory* studied whether the Pennsylvania registration statute violated a Virginia corporation's due process rights when another Virginian sued it here for injuries arising from work performed in Virginia and Ohio.[47] The injured Virginian had no meaningful connection to Pennsylvania beyond a brief period of residency during retirement.[48] Norfolk Southern challenged the Pennsylvania court's exercise of personal jurisdiction over it as violating its Due Process rights; the injured Virginian argued Norfolk Southern consented to general jurisdiction when it registered to do business as an out-of-state corporation.[49] The Pennsylvania Supreme Court recognized registration as consent but found the registration statute unconstitutional under the Due Process Clause.[50]

The Supreme Court reversed and remanded finding Pennsylvania's registration statute did not violate the Due Process Clause. The Court relied on its *Pennsylvania Fire Insurance Company v. Gold Issue Mining and Milling* decision as controlling precedent.[51] The Court in *Pennsylvania Fire* upheld a Missouri statute requiring out-of-state companies to consent to service as a condition of doing business in the state and found such consent did not violate due process.[52] The unanimous Court in *Pennsylvania Fire* explained "there was 'no doubt' [defendant] Pennsylvania Fire could be sued in Missouri by an out-of-state plaintiff on an out-of-state contract because it had agreed to accept service of process in Missouri on any suit as a condition of doing business there."[53]

The majority of justices in *Mallory* examined Pennsylvania's registration statute and found it largely indistinguishable from the Missouri statute at issue in *Pennsylvania Fire*.[54] The Court observed "Norfolk Southern ha[d] agreed to be found in Pennsylvania and answer any suit there for more than 20 years."[55] Norfolk Southern "concede[d] that it registered to do business in Pennsylvania, that it established an office there to receive service of process, and that in doing so it understood it would be amenable to suit on any claim."[56] The Court reaffirmed "*Pennsylvania Fire* held that suits premised on these grounds do not deny a defendant due process of law" and concluded "the state law and facts before [them] fall squarely within *Pennsylvania Fire*'s rule."[57]

Sig Sauer now asks us to look past binding precedent after it—like Norfolk Southern in *Mallory*—considered itself as "doing business" here and decided two dozen years ago to register with the advantage of being able to sue other parties in Pennsylvania courts. It attempts to distinguish the Court's *Mallory* guidance by emphasizing Norfolk Southern's "extensive" or "substantial" operations in the Commonwealth.[58] But the Court in *Pennsylvania Fire* makes no mention of the amount of business the out-of-state corporation conducted in Missouri.[59] Nor do we read the Court in *Mallory* conditioning a holding on an operational scale.[60] The Court's *Pennsylvania Fire* guidance remains controlling precedent and we are bound to follow it.[61]

We are guided by colleagues addressing similar consent-by-registration statutes after *Mallory*. Judge Wood upheld Georgia's implicit consent-by-registration scheme from a due process challenge in 2023 by applying Supreme Court and state precedent.[62] The Court of Appeals of Minnesota last summer likewise drew a direct comparison to *Pennsylvania Fire* and concluded neither *Mallory* nor the Supreme Court's "minimum contacts" jurisprudence displaced longstanding state precedent recognizing consent-based jurisdiction when a corporation designates an agent for service.[63]

Sig Sauer registered to do business in the Commonwealth in 2002 and remains registered today. "Pennsylvania law is explicit that 'qualification as a[n out-of-state] corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered [out-of-state] corporation, just as they can over domestic corporations."[64] The statute is clear registration carries the consequence of general personal jurisdiction. Like Norfolk Southern, Sig Sauer has "complied with this law for many years" and has "agreed to be found in Pennsylvania and answer any suit []here for more than 20 years."[65] *Pennsylvania Fire* requires no further analysis.[66]

Exercising general personal jurisdiction over Sig Sauer does not violate the Due Process Clause.

**C. The registration law does not violate the Dormant Commerce Clause.**

Sig Sauer also challenges the constitutionality of Pennsylvania's registration statute under the Dormant Commerce Clause. It argues Justice Alito's solo concurrence in *Mallory* signals some potential constitutional doubt about conditioning the right to do business on submission to general jurisdiction in suits with no connection to the forum.[67] Sig Sauer pins its entire argument on Justice Alito's thought "there is a good prospect that Pennsylvania's assertion of jurisdiction here—over an out-of-state company in a suit brought by an out-of-state plaintiff on claims wholly unrelated to Pennsylvania—violates the Commerce Clause."[68] It argues the facts before us present those exact circumstances because "Plaintiffs here are non-Pennsylvania residents suing a non-Pennsylvania corporation for alleged damages resulting from incidents which occurred outside of Pennsylvania."[69] Sig Sauer asserts the registration statute imposes an undue burden "on interstate commerce without serving any countervailing local interest" and otherwise discriminates against out-of-state corporations.[70] It warns "[i]mposing general jurisdiction here

would mean that *every* potential litigant that wants to sue a national or multinational corporation that is merely registered to do business in Pennsylvania has *carte blanche* permission to file suit here" and Pennsylvania "would become a magnet forum for suits involving conduct that occurred hundreds or thousands of miles away, against the countless companies registered to do business here."[71]

Messrs. Boanes and Southard reject Sig Sauer's Dormant Commerce Clause challenge and argue it rests on non-binding dicta.[72] They further contend the Dormant Commerce Clause is inapplicable because the registration statute neither regulates interstate commerce nor discriminates against or unduly burdens it.[73]

We find the registration statute does not violate the Dormant Commerce Clause in this case. We need not decide whether the statute might prove unconstitutional in other circumstances. We hold only exercising general personal jurisdiction here, based on Sig Sauer's registration as an out-of-state corporation in a case brought by at least two Pennsylvanians, does not offend the Dormant Commerce Clause.

**1. Justice Alito's question does not apply to the pleaded facts before us.**

Justice Alito expressed concern in his *Mallory* concurrence with Pennsylvania's assertion of personal jurisdiction "over an out-of-state company in a suit brought by an out-of-state plaintiff on claims wholly unrelated to" Pennsylvania leading to find himself "hard-pressed to identify any legitimate local interest that is advanced by" such a requirement.[74] But—key to today's issue—Justice Alito recognized a state "may have an interest 'in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.'"[75]

Two Pennsylvanians are seeking a remedy in a convenient forum for redressing injuries allegedly inflicted by a defect in a gun manufactured by a New Hampshire citizen who agrees it is doing business here and further consented to being sued here through the registration statute.

**2. The registration right is not a Hobson's choice for Sig Sauer.**

Sig Sauer agreed it is doing business in Pennsylvania. It agreed to register as a company doing business. It could have opted out if it changed its business over the last two dozen years.

We are not persuaded by its argument "[c]ompanies such as [itself] that do not have extensive operations within the Commonwealth face a Hobson's choice: whether to register to do business and submit to jurisdiction or to instead decline to do business in the Commonwealth."[76] The statutory scheme does not operate in this manner. An out-of-state corporation engaged solely in interstate commerce may lawfully conduct business in Pennsylvania without registration. Sig Sauer insists it lacks physical presence, owns no property, maintains no offices, and does not engage in systematic corporate activity in Pennsylvania. If so, the Pennsylvania General Assembly did not compel registration.[77] Sig Sauer nevertheless elected to register more than two decades ago. The only consequence of declining registration would have been the inability to maintain an action in Pennsylvania courts and Sig Sauer concedes it does not affirmatively file lawsuits here. We see no "Hobson's choice."

Sig Sauer's own cited authority undercuts its claim of compulsion.[78] Judge Bartle recognized the out-of-state "defendants were certainly doing business in Pennsylvania as that term is used in common parlance" but concluded their activities "fit[] neatly" within the statutory exceptions to registration.[79] Judge Bartle further explained even if the entities violated Pennsylvania law by not registering as an out-of-state corporation, "such a violation does not trigger 'consent' to general jurisdiction over all claims against defendants, whatever other

penalties may exist."[80] Judge Bartle's analysis in *Simon* informs an out-of-state corporation may operate here without registering and without subjecting itself to general jurisdiction. The General Assembly does not impose the categorical or coercive choice Sig Sauer describes, nor did the General Assembly force Sig Sauer to choose between lawful business activity and submission to jurisdiction based on the record before us.[81]

**D. We enjoy proper venue.**

Sig Sauer also moves to dismiss for improper venue.[82] Messrs. Boanes and Southard assert venue is proper because Sig Sauer is a Pennsylvania resident for venue purposes given it consents to our personal jurisdiction through Pennsylvania's registration statute and Federal Rule of Civil Procedure 4(k).[83] Sig Sauer argues the alleged unconstitutionality of Pennsylvania's registration statute as applied to it means we do lack proper venue.[84] The parties' arguments make clear they agree on one thing: the issue of proper venue as argued by Sig Sauer rises and falls with personal jurisdiction.[85]

Congress provides the criteria for proper venue.[86] Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. . . ."[87] Entities, "whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction. . . ."[88] Rule 4(k) states effective "service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."[89]

Sig Sauer chose to do business in Pennsylvania and registered to do so. The registration statute provided notice of the jurisdictional consequence of registration. We find the registration statute constitutional as applied to Sig Sauer because it does not violate either the Due Process or

the Dormant Commerce Clause. Sig Sauer is subject to the personal jurisdiction of Pennsylvania courts and is therefore subject to our personal jurisdiction as well. Our ability to exercise personal jurisdiction over Sig Sauer makes it a resident of this District. Venue is proper here.

**E. We find no basis to sever claims today.**

Sig Sauer further moves to sever and transfer the injured persons' claims.[90] It argues the injured persons cannot satisfy the Supreme Court's Rule 20(a)'s "same transaction or occurrence" requirement for proper joinder because the claims arise from dozens of distinct incidents occurring on different dates, in different states, under varying handling conditions, and involving different purchase histories and injuries.[91] It maintains a consolidated proceeding would create jury confusion, prejudice, and inefficiency even if joinder is permissible.[92] Sig Sauer asks we sever the claims for individual disposition because: (1) the claims do not share "many important questions of fact"; (2) severance promotes judicial economy; (3) severance will not prejudice Messrs. Boanes and Southard and the other injured persons; and (4) Sig Sauer will be unduly prejudiced.[93]

Messrs. Boanes and Southard counter we should liberally construe joinder where claims are logically related and share at least one common question of law or fact.[94] They argue each claim arises from the same alleged design defect and will require resolution of shared questions concerning the cause of the alleged unintended discharges, the existence of a defect, and Sig Sauer's knowledge of prior incidents and safety risks.[95] They contend severance would defeat judicial economy by requiring duplicative discovery and expert proceedings across multiple districts and risking inconsistent rulings on recurring defect and evidentiary issues.[96] They maintain concern regarding jury confusion can be addressed later through case management or separate trials if necessary.[97]

We retain broad discretion to sever claims.[98] We consider three factors: "(1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence."[99]

Severance is premature today. Messrs. Boanes and Southard alleged sufficient facts to satisfy the joinder requirements. We have not begun the presumed staged discovery. It is too soon to determine whether the claims should proceed separately at trial.[100] We are persuaded by Judge LaPlante's reasoning in related P320 litigation pending in the District of New Hampshire declining severance at an early procedural stage.[101] Judge LaPlante concluded consolidated discovery promotes efficiency in product liability actions alleging a single defect and concerns regarding jury confusion or prejudice are more appropriately addressed after factual development.[102] We agree. "Keeping the claims together during the discovery phase of the litigation would not prejudice any party, and may encourage efficiency."[103] We may revisit later requests for severance, including for trial, if individualized issues later predominate or concrete prejudice emerges.

We deny Sig Sauer's motion to sever and transfer without prejudice.

## III. Conclusion

We appreciate zealous advocacy. But Sig Sauer asks us to look past governing Supreme Court precedent. The Supreme Court did not do so three years ago in *Mallory* directing us we cannot ignore precedent. We will not do so today. We also find no basis to find the Pennsylvania registration law applied to a manufacturer admittedly doing business here who chooses to consent to personal jurisdiction violates the Dormant Commerce Clause especially when claims

are brought by allegedly injured Pennsylvanians among others. We enjoy proper venue. We find no basis to sever at this stage.

---

[1] ECF 1 ¶¶ 63, 81.

[2] *Id.* ¶ 81.

[3] *Id.* ¶ 92.

[4] *Id.* ¶¶ 1, 100.

[5] *Id.* ¶ 86.

[6] ECF 8-3 ¶ 4.

[7] *Id.* ¶¶ 14, 260.

[8] *Id.* ¶¶ 261, 263. Mr. Boanes pleaded his "finger never touched the face of the P320's trigger and he did not intend to fire the weapon." *Id.* ¶ 262.

[9] *Id.* ¶¶ 52, 422.

[10] *Id.* ¶¶ 423, 425. Mr. Southard asserts his "finger never touched the face of the P320's trigger and he did not intend to fire the weapon." *Id.* ¶ 424.

[11] *Id.* ¶¶ 263, 425.

[12] *Id.* ¶¶ 465–1081.

[13] *Id.* ¶¶ 488, 666, 939, 1060, 1089–1146.

[14] *See generally* ECF 1.

[15] *See generally* ECF 8-1.

[16] ECF 8-1 at 11–15.

[17] *Id.* at 15–18. Sig Sauer also challenges specific personal jurisdiction and contends Messrs. Boanes and Southard allege no facts tying the incidents to Pennsylvania. *Id.* at 3. Messrs. Boanes and Southard do not address this argument. We need not address specific jurisdiction as we find general personal jurisdiction.

[18] *Id.* at 18–19.

[19] ECF 13 at 7–10. Proper service establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

[20] ECF 13 at 10–18.

[21] *Id.* at 19–20.

[22] 15 Pa. C.S.A. § 411(a).

[23] *Danavero, Inc v. Thrive Com., LLC*, No. 25-5520, 2026 WL 49716, at *1 (E.D. Pa. Jan. 7, 2026) (citing 15 Pa. C.S.A. § 403(a)(1–13)) (emphasis added). Judge Savage held Pennsylvania law did not bar a foreign corporation from bringing and maintaining the action because its conduct fell under the interstate commerce exception and "it need not register as a foreign corporation to do business in Pennsylvania." *Id.* at *2. The corporation operated from Canada and its "conduct was [not] systematic or extensive so as to remove its activity from" the statutory exception. *Id.*

[24] 15 PA. CONS. STAT. ANN. § 403(a)(5), (11). The Committee Comment explains an out-of-state corporation "does not need to register if it sells goods in Pennsylvania through independent contractors" because "[t]hese transactions are viewed as transactions by the independent contractors, not by the [out-of-state corporation] itself even though the [corporation] sets some limits or ground rules for its contractors." 15 PA. CONS. STAT. ANN. § 403 Committee Comment. "If these controls are sufficiently pervasive, however, the [out-of-state corporation] may be deemed to be selling for itself in intrastate commerce, and not through the independent contractors and therefore engaged in doing business in Pennsylvania." *Id.*

[25] 15 PA. CONS. STAT. ANN. § 403 Committee Comment. The Comment also clarifies an out-of-state corporation "need not register even if it also does work and performs acts within Pennsylvania incidental to the interstate business, *e.g.*, if it takes or enforces a security interest incidental to these transactions" or "merely because it sends traveling salesmen or solicitors into Pennsylvania so long as contracts are not made within Pennsylvania." *Id.* "[A]n office may be maintained by an [out-of-state corporation] in Pennsylvania without registering if the office's functions relate solely to interstate commerce." *Id.*

[26] *Id.*

[27] *Id.*

[28] 15 PA. CONS. STAT. ANN. § 402(d).

[29] *See* 42 PA. CONS. STAT. ANN. § 5301(a)(2)(i) ("The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over . . . [i]ncorporation under or qualification as a foreign corporation under the laws of this Commonwealth.").

[30] 42 PA. CONS. STAT. ANN. § 5301(b).

[31] *See* 15 PA. CONS. STAT. ANN. § 411(b); *see also* 15 PA. CONS. STAT. ANN. § 411 Committee Comment ("Often the failure to register is a result of inadvertence or bona fide disagreement as

to the scope of 15 PA. CONS. STAT. § 403 which is necessarily imprecise; and the imposition of harsh sanctions in those situations is inappropriate.").

32 15 PA. CONS. STAT. ANN. § 411 Committee Comment.

33 15 PA. CONS. STAT. ANN. § 411(c).

34 15 PA. CONS. STAT. ANN. § 411 Committee Comment (citing 15 Pa. PA. CONS. STAT. ANN. § 411(d)).

35 ECF 8-3 ¶ 4.

36 ECF 13-3 at 2.

37 ECF 8-1 at 3.

38 ECF 8-3 ¶ 5.

39 *Id.* ¶¶ 5–6.

40 *Id.* ¶ 7.

41 *Id.* ¶ 10.

42 *See* ECF 8-1 at 15.

43 *Id.* at 17.

44 *Id.* at 16–17.

45 *Id.* at 18.

46 *See generally* ECFs 8-1, 13.

47 *Mallory v. Norfolk S. Ry. Co*., 600 U.S. 122 (2023).

48 *Id.* at 126.

49 *Id.* at 126–27.

50 *Id.* at 127. We disagreed with this line of reasoning in *Bors v. Johnson & Johnson* before this issue reached the Pennsylvania Supreme Court. 208 F.Supp. 3d 648 (E.D. Pa. 2016). We found the registration statute did not violate the Due Process Clause where a Pennsylvanian alleged injuries arising from product use in Pennsylvania and sued an out-of-state corporation supplying a component incorporated into the product but owning no property, maintaining no offices or accounts, and conducting no related business in Pennsylvania. *Id.* at 651–55. The injured Pennsylvanian in *Bors* alleged the corporation's only connection to Pennsylvania arose from its decision to register to do business in the Commonwealth as an out-of-state corporation. *Id.* We

agreed with the propriety of consent-by-registration almost ten years ago under the Due Process Clause and do so again today with the benefit of the Court's *Mallory* guidance.

[51] *Mallory*, 600 U.S. at 134–36. Justice Gorsuch delivered the opinion of the Court in Parts I and III-B, which Justices Thomas, Alito, Sotomayor, and Jackson joined and reflect the majority's holding. Justice Gorsuch wrote Parts II, III-A, and IV for a four-Justice plurality.

[52] *Pa. Fire Ins. Co. v. Gold Issue Mining and Milling*, 243 U.S. 93, 94–95 (1917).

[53] *Mallory*, 600 U.S. at 133 (citing *Pa. Fire Ins. Co.*, 243 U.S. at 95).

[54] *Id.* at 134–35.

[55] *Id.* at 135.

[56] *Id*.

[57] *Id.* at 135–36. The majority further instructed lower courts to follow precedents the Court has not explicitly overruled. *Id.* at 136 (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)) ("As this Court has explained: 'If a precedent of this Court has direct application in a case,' as *Pennsylvania Fire* does here, a lower court 'should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'").

[58] *See* ECF 8-1 at 15–17.

[59] *See Pa. Fire Ins. Co.*, 243 U.S. at 94–95.

[60] The references to Norfolk Southern's "extensive operations" appear in the plurality's opinion and Justice Alito's concurrence explaining why the Court declined to overrule *Pennsylvania Fire*. *See Mallory*, 600 U.S. at 142–43, 153.

[61] *See id.* at 136.

[62] *See Sloan v. Burist*, No. 22-76, 2023 WL 7309476, at *4 (S.D. Ga. Nov. 6, 2023) (citing *Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 90 (Ga. 2021)) ("*Cooper Tire* was decided before *Mallory*, but the Georgia Supreme Court, like the United States Supreme Court, relied on *Pennsylvania Fire* to uphold Georgia's consent-by-registration statute, finding that '[u]nless and until the United States Supreme Court overrules *Pennsylvania Fire*, that federal due process precedent remains binding on this Court and lower federal courts.'").

[63] *See Lynn v. BNSF Ry. Co.*, No. 27-23-17523, 2025 WL 1860488, at *2–4 (Minn. Ct. App. July 7, 2025).

[64] *Mallory*, 600 U.S. at 134 (quoting 42 PA. CONS. STAT. ANN. § 5301(a)(2)(i)). Our Court of Appeals in *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) recognized thirty-five years ago we can find personal jurisdiction through consent ("Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional."). The Court's holding in *Mallory*

confirms consent-by-registration remains valid. No Supreme Court decision has overruled *Bane*. Our colleagues relied on *Bane* in determining Pennsylvania's statute effectuates consent and this reason alone does not violate due process both before and after *Mallory*. Judge Padova found six years before *Mallory* the registration statute did not violate due process because no Supreme Court decision limiting courts' personal jurisdiction had eliminated consent as a basis for personal jurisdiction, meaning *Bane* remains good law. *Henga v. Smitty's Supply Inc.*, No. 16-3613, 2017 WL 2563231, at *3–4 (E.D. Pa. June 13, 2017). Judge Younge relied on *Mallory* and *Bane* together when finding consent under Pennsylvania's registration statute is a sufficient basis for consent by itself. *Jasinski v. Kia Am., Inc.*, No. 25-1234, 2025 WL 3047883, at *6 (E.D. Pa. Oct. 21, 2025) ("[N]o further 'minimum contacts' analysis is necessary.").

[65] *Mallory*, 600 U.S. at 134–35.

[66] *Id.* at 136.

[67] ECF 8-1 at 8–9 (citing *Mallory*, 600 U.S. at 150 (Alito, J., concurring) ("A State's assertion of jurisdiction over lawsuits with no real connection to the State may violate fundamental principles that are protected by one or more constitutional provisions or by the very structure of the federal system that the Constitution created.")).

[68] *Id.* at 6 (quoting *Mallory* at 160 (Alito, J., concurring)).

[69] *Id.* at 10.

[70] *Id.* at 12–15.

[71] *Id.* at 10 (emphasis in original).

[72] ECF 13 at 10.

[73] *Id.* at 11–16.

[74] *Mallory,* 600 U.S. at 160–62 (Alito, J., concurring) (emphasis omitted).

[75] *Id.* at 162–63 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).

[76] ECF 8-1 at 12. A Hobson's choice is "an apparently free choice when there is no real alternative" or "the necessity of accepting one of two or more equally objectionable alternatives." *Hobson's choice*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/Hobson%27s%20choice (last visited March 4, 2026).

[77] *Cf. Mallory*, 600 at 148 (Jackson, J., concurring) ("Norfolk Southern [was not] compelled to register and submit itself to the general jurisdiction of Pennsylvania courts simply because its trains passed through the Commonwealth. . . . Registration is required when corporations seek to conduct local business in a 'regular, systematic, or extensive' way. . . . Norfolk Southern apparently deemed registration worthwhile and opted in.") (emphasis in original).

[78] ECF 8-1 at 12 (citing *Simon v. First Sav. Bank of Ind.*, 692 F. Supp. 3d 479 (E.D. Pa. 2023)).

[79] *Simon*, 692 F. Supp. 3d at 483.

[80] *Id.*

[81] *See also* ECF 14 at 6–7 ("[U]nder the Pennsylvania scheme, a foreign corporation cannot lawfully conduct business in the Commonwealth without registering, and under 42 [PA. CONS. STAT. ANN.] § 5301, that registration is deemed 'consent' to general jurisdiction. Thus, Plaintiffs' logic impermissibly ignores the fact that this so-called 'choice' of registering to do business is, in and of itself, coercive and an undue burden (if not outright discrimination) on interstate commerce.")).

[82] ECF 8-1 at 18–19.

[83] ECF 13 at 20.

[84] ECF 8-1 at 19.

[85] *Compare id.* ("Absent this unconstitutional [consent-by-registration] hook, venue is improper in this district . . . .") *with* ECF 13 at 20 ("Simply, because Sig Sauer is subject to this Court's personal jurisdiction under Pennsylvania's Registration Statute, venue is proper . . . .").

[86] 28 U.S.C. § 1391.

[87] *Id.* § 1391(b)(1). Messrs. Boanes and Southard also assert subsection (b)(2) as a basis for proper venue in their Complaint. ECF 1 ¶ 67. We decline to address any potential basis for venue under subsection (b)(2) because we resolve the issue of proper venue under subsection (b)(1).

[88] *Id.* § 1391(c)(2).

[89] Fed. R. Civ. P. 4(k)(1).

[90] *See generally* ECF 9-1. "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). We may sever a claim against a party to remedy a misjoinder. Fed. R. Civ. P. 21; *see also Smith v. Gourley*, No. 24-2196, 2026 WL 360270, at *15 (M.D. Pa. Feb. 9, 2026) ("To remedy a misjoinder, a court may add or drop a party or sever any claims.").

[91] ECF 9-1 at 2–4.

[92] *Id.* at 4–5.

[93] *Id.* at 5–10.

[94] ECF 12 at 8.

[95] *Id.* at 8–13.

[96] *Id.* at 14–18.

[97] *Id.* at 18.

[98] *LSH Co. v. Lincoln Nat'l Corp.*, No. 18-5529, 2019 WL 13380240, at *1 n.1 (E.D. Pa. May 10, 2019) (citing *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 468 (E.D. Pa. 2013)); *see also Riley v. Primecare Med. Inc., et al.*, No. 20-00325, 2026 WL 483649, at *4 (M.D. Pa. Feb. 20, 2026) ("The Federal Rules of Civil Procedure permit district courts to 'sever any claim against a party.' . . . The decision to sever claims is vested within the discretion of the district court.").

[99] *Riley*, 2026 WL 483649, at *4.

[100] *See, e.g., State Farm Fire v. MTD Prods. LLC*, No. 16-2242, 2016 WL 3538613, at *2 (E.D. Pa. June 28, 2016) ("Courts are reluctant to sever claims where discovery has not yet begun.") (citing *Barnett v. Topps Co.*, No. 98-462, 1998 WL 257859, at *1 (E.D. Pa. May 21, 1998) (refusing to sever claims and stating "[d]iscovery is necessary to ascertain the parameters of the claims") (citation omitted); *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 145 (E.D. Pa. 2001) ("[A]s discovery has not yet closed and dispositive motions have not been filed, it is too soon to determine whether the claims should be severed for trial.").

[101] Memorandum Order, *Armendariz v. Sig Sauer, Inc.*, No. 22-536 (D.N.H. June 27, 2023), ECF 40 at 2–5.

[102] *Id.* at 4–5.

[103] *Bush v. Luzerne Cnty.*, No. 23-1152, 2023 WL 8791169, at *2 (M.D. Pa. Dec. 19, 2023).