**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY BLADE, *et al.*, | : | |
| | : | No. 25-CV-06645-MAK |
| Plaintiffs, | : | |
| | : | Hon. Mark A. Kearney |
| v. | : | |
| | : | |
| SIG SAUER, INC. | : | |
| | : | |
| Defendants. | : | |

---

**ORDER**

---

AND NOW, this _____ day of April 2026, upon consideration of the Motion for Leave to Participate as *Amicus Curiae*, it is hereby **ORDERED** that the Motion is **GRANTED**. The Clerk of Courts shall **DOCKET** the *Amicus* Brief attached as "Exhibit A" to the Motion.

BY THE COURT:

_____
Hon. Mark A. Kearney
United States District Court Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY BLADE, *et al.*, | : | |
| | : | No. 25-CV-06645-MAK |
| Plaintiffs, | : | |
| | : | Hon. Mark A. Kearney |
| v. | : | |
| | : | |
| SIG SAUER, INC. | : | |
| | : | |
| Defendants. | : | |

---

**MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE***

---

Pennsylvania Coalition for Civil Justice Reform ("PCCJR"), Pennsylvania Chamber of Business and Industry ("PA Chamber"), Insurance Federation of Pennsylvania ("Federation"), American Tort Reform Association ("ATRA"), and Pennsylvania Defense Institute ("PDI"), by and through their undersigned counsel, Babst, Calland, Clements & Zomnir, P.C., respectfully move for this Court for leave to participate as *amicus curiae* in this case in support of Defendant Sig Sauer's Motion for Reconsideration (Dkt. 25).

PCCJR is a statewide, bipartisan alliance representing businesses large and small, professional and trade associations, health care providers, energy development companies, nonprofit groups, taxpayers, and other Pennsylvania entities. PCCJR is dedicated to bringing fairness to litigants and improving Pennsylvania's civil justice system by illuminating significant legal issues and advocating for clarity and efficiency in the Commonwealth's courts. As such, PCCJR often participates as an *amicus* in appeals of statewide and national importance.

The PA Chamber is the Commonwealth's largest broad-based business advocacy association, whose membership comprises over 13,000 member businesses of all sizes—from sole

proprietors to Fortune 100 companies—and industry sectors throughout Pennsylvania. The PA Chamber's purpose is to provide a unified voice for businesses in the halls of the state Capitol and to advocate for job creation in Pennsylvania to lead to greater prosperity for its residents. It represents approximately 50% of the private workforce in the Commonwealth.

The Federation is the Commonwealth's leading trade organization for commercial insurers of all types. The Federation consists of nearly 200 member companies and speaks on behalf of the industry in matters of legislative and regulatory significance. It also advocates on behalf of its members and their insureds in important judicial proceedings.

ATRA is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation.  For more than three decades, ATRA has filed *amicus* briefs in cases involving important liability issues, including over personal jurisdiction.

PDI was organized in 1969 as a nonprofit association of defense attorneys and insurance company executives.  PDI is a forum for developing public policy initiatives, for the exchange of ideas, and for the pursuit of its goals, including the prompt, fair, and just disposition of claims; preservation of the administration of justice; the enhancement of the legal profession's services to the public; the elimination of court congestion and delays in civil litigation; and the promotion of other public-minded activities.  To achieve these goals, PDI represents its members in a wide array of matters, including legislation and litigation.

If granted leave, PCCJR, the PA Chamber, the Federation, ATRA, and PDI will file the proposed *Amicus* Brief attached to this Motion as "**Exhibit A**."  PCCJR, the PA Chamber, the

Federation, ATRA, and PDI believe that their proposed Brief will assist this Court in deciding the

pending Motion—which implicates a still-developing area of the law.

Respectfully submitted,

BABST CALLAND, CLEMENTS AND ZOMNIR P.C.


/s/ Casey Alan Coyle
Casey Alan Coyle, Esquire
PA ID No. 307712
300 N. 2nd Street, Suite 801
Harrisburg, PA 17101
(717) 868-8377
ccoyle@babstcalland.com

Devlin E. Carey, Esquire
PA ID No. 332768
Two Gateway Cener, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5499
jschaeffer@babstcalland.com
*Counsel for Amici Curiae*

Dated: April 3, 2026

3

# EXHIBIT A

**Proposed Brief of *Amici Curiae* Pennsylvania Coalition for Civil Justice Reform, Pennsylvania Chamber of Business and Industry, Insurance Federation of Pennsylvania, American Tort Reform Association, and Pennsylvania Defense Institute in Support of Defendant Sig Sauer's Motion for Reconsideration**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY BLADE, *et al.*, | : | |
| | : | No. 25-CV-06645-MAK |
| Plaintiffs, | : | |
| | : | Hon. Mark A. Kearney |
| v. | : | |
| | : | |
| SIG SAUER, INC. | : | |
| | : | |
| Defendants. | : | |

---

**BRIEF OF *AMICI CURIAE* PENNSYLVANIA COALITION FOR CIVIL JUSTICE REFORM, PENNSYLVANIA CHAMBER OF BUSINESS AND INDUSTRY, INSURANCE FEDERATION OF PENNSYLVANIA, AMERICAN TORT REFORM ASSOCIATION, AND PENNSYLVANIA DEFENSE INSTITUTE IN SUPPORT OF DEFENDANT SIG SAUER'S MOTION FOR RECONSIDERATION**

---

## I.    <u>INTRODUCTION</u>

"*While that is the end of the case before us, it is not the end of the story for registration-based jurisdiction.*"[1]

With these words in *Mallory*, Justice Alito highlighted a doctrinal fissure as to the continued constitutionality of Pennsylvania's consent-by-registration statute (the "Registration Statute" or "Statute"), codified at 15 Pa.C.S. § 411(a), and 42 Pa.C.S. § 5301(a)(2)(i), (b). Although he ultimately supplied the decisive vote in *Mallory*'s determination that the Statute did not violate the Due Process Clause under *Mallory*'s facts, Justice Alito wondered aloud whether the Court had missed the mark by testing the Statute against the Due Process Clause alone.

Justice Alito observed that the Statute implicates federalism concerns that "fall more naturally within the scope of the Commerce Clause" and its "deeply rooted" negative principle,

---

[1] *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 154 (2023) (Alito, J., concurring).

the Dormant Commerce Clause. *Id.* He went further, opining there was a "good prospect" that the Statute—which authorizes jurisdiction "over an out-of-state company in a suit brought by an out-of-state plaintiff on claims wholly unrelated to Pennsylvania"—impermissibly restricts interstate commerce. *Id*. at 160–162. At the very least, Justice Alito concluded, the Dormant Commerce Clause question necessitated further evaluation. And *Mallory* expressly invited the Pennsylvania Supreme Court to consider the Dormant Commerce Clause's bearing on the Statute on remand. *Id*. at 127 n.3. But the Pennsylvania Supreme Court declined the invitation, and no appellate court has analyzed the Statute under the Dormant Commerce Clause since.

The resulting uncertainty consigns Pennsylvania to a state of practical and legal limbo. Practically, the Statute subjects thousands of foreign companies operating in Pennsylvania—the vast majority small businesses—to oppressive litigation simply because they chose to do business here. By the same token, the Statute opens Pennsylvania's courtroom doors to legions of out-of-state plaintiffs with out-of-state injuries who seek relief in the plaintiff-friendly confines of the Commonwealth's busiest courts. As a legal matter, the Statute's uncertain constitutionality post-*Mallory* leaves Pennsylvania courts without footing to reliably and consistently assess jurisdictional challenges to the Statute.

Litigants nationwide need clarity on the Statute, and Defendant Sig Sauer's pending Motion for Reconsideration (Dkt. 25) is the ideal vehicle to provide it. Accordingly, *Amici Curiae* Pennsylvania Coalition for Civil Justice Reform, Pennsylvania Chamber of Business and Industry, the Insurance Federation of Pennsylvania, American Tort Reform Association, and the Pennsylvania Defense Institute respectfully urge this Court to grant the Motion for Reconsideration and, at minimum, amend and certify the Court's March 5, 2026 Order denying Sig Sauer's Motion to Dismiss (Dkt. 17) so that the United States Court of Appeals for the Third

Circuit can resolve the Statute's constitutionality through the prism of the Dormant Commerce Clause.

## II.    ARGUMENT

### A.    This Court Should Grant Sig Sauer's Motion for Reconsideration

#### 1.    *Mallory* upends the jurisdictional landscape for foreign businesses by introducing new and as-yet-unconfronted constitutional questions about the Registration Statute.

Over the last century, the jurisprudence of the United States Supreme Court has contracted the fora in which business entities are subject to general personal jurisdiction, culminating with the concept that businesses are "at home" in just two locations for general jurisdiction purposes: where they are incorporated; or where they maintain their principal places of business. *E.g.*, *Daimler AG v. Bauman*, 571 U.S. 117 (2014). This test has provided some degree of certainty to corporate defendants and disincentivizes forum shopping.

The *Mallory* decision detracts from this relative certainty by creating more questions than answers. The only "answer" it yields—*i.e.*, that the Registration Statute apparently can satisfy due process in certain circumstances, while its viability is unsettled under the United States Constitution—is unhelpful. *See*, *e.g.*, Gregory T. Sturges, *et al.*, [Mallory v. Norfolk Southern Railway Co.](#), GREENBERGTRAURIG (June 30, 2023) (questioning whether *Mallory* is "a short-lived pyrrhic victory soon to be relegated on a combination of dormant Commerce Clause and due process grounds").[2] While some have insisted that *Mallory*'s upshot is straightforward, the only clear takeaway is that a majority of the Justices of the United States Supreme Court believe the Statute is constitutionally infirm but simply could not align on the basis for its invalidation. *See*

---

[2] *Available at*: [https://www.gtlaw.com/en/insights/2023/6/mallory-v-norfolk-southern-railway-co-a-new-third-rail-for-litigation-tourism-or-a-short-lived-detour-from-the-at-home-rule](https://www.gtlaw.com/en/insights/2023/6/mallory-v-norfolk-southern-railway-co-a-new-third-rail-for-litigation-tourism-or-a-short-lived-detour-from-the-at-home-rule).

*Mallory*, 600 U.S. at 150–163 (Alito, J., concurring); *id.* at 163–180 (Barrett, J., dissenting, joined by Roberts, C.J., and Kagan and Kavanaugh, JJ.).

*Mallory* urged the Pennsylvania Supreme Court to explore the Dormant Commerce Clause question reflects reservations regarding the Statute's constitutional vitality. *See id.* at 127 n.3. But the Pennsylvania Supreme Court summarily remanded the case without addressing that question. *Mallory v. Norfolk S. Ry. Co.*, 300 A.3d 1013 (Pa. 2023) (*per curiam*). This created a jurisprudential void, leaving countless stakeholders in the lurch. *See* Aleeza Furman, *Pa. Justices Remand 'Mallory' to Trial Court, Registration Statute Uncertainty Expected to Linger*, THE LEGAL INTELLIGENCER (Aug. 30, 2023).[3]

The only clarity to be drawn from *Mallory* comes in the form of its bleak and all-but-inevitable consequences, including (1) protracted litigation, conflicting trial-court decisions, and appellate headaches regarding the Statute's constitutionality, *see*, *e.g.*, *id.*; (2) plaintiffs' capitalization (as here) on *Mallory*'s departure from settled principles of corporate personal jurisdiction to leverage the constitutionally ambiguous Statute as a license for forum shopping, *see* Alison Frankel, *US Supreme Court Clears Path for Plaintiffs to Pick Where to Sue Corporations*, REUTERS (June 28, 2023);[4] and (3) enactment of copycat consent-by-registration laws by other states emboldened by the *Mallory* plurality's approval of the Statute, *see Analysis of the United States Supreme Court's Ruling in Mallory*, AM. TORT REFORM ASS'N (Aug. 28, 2023) ("ATRA Article").[5]

---

[3] *Available at*: https://www.law.com/thelegalintelligencer/2023/08/30/pa-justices-remand-mallory-to-trial-court-registration-statute-uncertainty-expected-to-linger/.

[4] *Available at*: https://www.reuters.com/legal/government/column-us-supreme-court-clears-path-plaintiffs-pick-where-sue-corporations-2023-06-28/.

[5] *Available at*: https://www.atra.org/legal_brief/analysis-of-the-united-states-supreme-courts-ruling-in-mallory-v-norfolk-southern-railway-co-regarding-pennsylvanias-jurisdiction-consent-statute-an-overview/.

These concerns are hardly hyperbolic.  Litigants lack definitive appellate guidance regarding the Registration Statute's constitutionality.  Meanwhile, courts like the Philadelphia County Court of Common Pleas have assumed a national reputation as plaintiff-friendly locales, a fact Justice Alito himself recognized.  *See Mallory*, 600 U.S. at 153–154 & n.1 (Alito, J., concurring) ("[I]t is hard to see Mallory's decision to sue in Philadelphia as anything other than the selection of a venue that is reputed to be especially favorable to tort plaintiffs.").  Others have noted this reality as well. *See In re: Paraquat Prods. Liability Litig.*, No. 220500559 (Phila. Cnty. Ct. Com. Pl.), Def. Syngenta Crop Protection's Reply in Further Supp. of Mot. to Certify at 18 ("[Post-*Mallory*], over 80 additional plaintiffs with no connection to the Commonwealth on the face of their complaints have filed suit in Pennsylvania.").

And while the Statute's breadth makes it unique among states, many others (including Georgia, Iowa, Kansas, and Minnesota) have analogous statutes that permit consent-by-registration jurisdiction and are thus ripe for legislative mirroring.  *See* James A. Beck, *Updating Our 50-State Survey on General Jurisdiction by Consent*, DRUG & DEVICE L. BLOG (Nov. 5, 2018).[6] Other states could very well be awaiting a conclusive determination regarding the Statute's constitutionality to move forward with like-minded legislation.  *See* ATRA Article, *supra* ("Enactment of such statutes in other states appears doubtful until courts clarify the dormant commerce clause and other constitutional issues identified in Justice Alito's *Mallory* concurrence.").  *Mallory* could be read as setting the stage for each state to pass similar general jurisdiction statutory schemes.

Until the Third Circuit weighs in on this vital issue, uncertainty and inconsistency will only intensify.

---

[6]  *Available at*:  https://www.druganddevicelawblog.com/2018/11/updating-our-post-bauman-50-state-survey-on-general-jurisdiction-by-consent.html.

**2.      In deciding whether to grant Sig Sauer's Motion, this Court must reckon with the practical realties of the Statute's continued application.**

*Mallory*'s far-reaching practical ramifications also counsel in favor of granting Sig Sauer's Motion.  At least one Justice of the United States Supreme Court, relying upon long-standing restrictions on state authority, has raised concerns about the Statute's potentially "devastating" economic impact on out-of-state businesses (particularly small ones) operating in Pennsylvania and elsewhere.  *Mallory*, 600 U.S. at 161–162 (Alito, J., concurring) ("[T]he impact on small companies, which constitute the majority of all U.S. corporations, could be devastating.").  These concerns are well founded.  *See*, *e.g.*, Christopher S. D'Angelo, *et al.*, *Out-of-State Defendants Beware: Supreme Court Upholds Constitutionality of Pennsylvania's "Consent-by-Registration" Statute, General Personal Jurisdiction Abounds*, MONTGOMERY MCCRACKEN (June 30, 2023) ("Small businesses [post-*Mallory*] will want to be particularly wary as many do not have the resources to develop creative corporate structuring to insulate them from litigation.").[7]  Over 99% of companies operating within the United States are small businesses, employing 45.9% of the nation's workforce and accounting for between 43.5% and 50.7% of America's GDP since the late 1990s.  *Small Business* Data Center, U.S. CHAMBER OF COMMERCE.[8]  And 99.6% of Pennsylvania's companies are small businesses, employing 46.2% of the state's workforce and accounting for 31.4%, or $10.7 billion, of exports.  *2022 Small Business Profiles: Pennsylvania*, U.S. SMALL BUS. ADMIN.: OFFICE OF ADVOCACY.[9]  Further, at least 100,000 nonresident companies are registered to do business in the Commonwealth.  *Registered Businesses in PA*

---

[7] *Available at*: https://www.mmwr.com/out-of-state-defendants-beware-supreme-court-upholds-constitutionality-of-pennsylvanias-consent-by-registration-statute-general-personal-jurisdiction-abounds/.

[8] *Available at*: https://www.uschamber.com/small-business/small-business-data-center.

[9] *Available at*: https://advocacy.sba.gov/wp-content/uploads/2022/08/Small-Business-Economic-Profile-PA.pdf.

*Current by County*, PA. DEP'T OF STATE (updated Nov. 8, 2023).[10]  Given the national and local trends, it is reasonable to conclude that most of these foreign companies are also small businesses.

And yet the Registration Statute allows forum-shopping plaintiffs to haul countless of these foreign small businesses into Pennsylvania courts, irrespective of the subject litigation's connection to the Commonwealth.  Faced with "intolerable unpredictability," and ill-equipped to navigate suits directly or undertake mitigation measures, the "prudent" small business could choose to withdraw from Pennsylvania or avoid entering the Commonwealth's market outright. *See Mallory*, 600 U.S. at 161–162 (Alito, J., concurring).

The Registration Statute, of course, existed pre-*Mallory*.  But with the imprimatur of *Mallory*—together with the soaring trend of nuclear verdicts in the Commonwealth—widespread abuse of the Statute for forum shoppers who prefer plaintiff-friendly Pennsylvania courts is all but inevitable.  Businesses will now think twice about whether to conduct business in the Commonwealth, at significant costs to the state's financial well-being.  In short, this case presents a critical constitutional question that the United States Supreme Court left open in *Mallory*.  This issue, left unresolved, could disproportionately affect the many small businesses that fuel the Commonwealth's economy and spell serious economic consequences for Pennsylvania and the country.

### 3. Sig Sauer advances a dispositive Dormant Commerce Clause challenge, further necessitating immediate review.

Beyond the glaring uncertainty surrounding the Registration Statute and its troubling implications, the Statute remains constitutionally suspect under the Dormant Commerce Clause. Recognizing this uncertainty, Sig Sauer has presented this Court with a Dormant Commerce

---

[10]    *Available at*:    https://data.pa.gov/Licenses-Certificates/Registered-Businesses-in-PA-Current-by-County-Depa/xvd7-5r2c.

Clause challenge that legitimately imperils its continued constitutionality. Because that challenge is meritorious and would result in the dismissal of dozens of the plaintiffs in this action, this Court should grant Sig Sauer's Motion for this independent reason.

> **a.** **The United States Supreme Court has determined that coercive jurisdictional state laws like the Registration Statute are unconstitutional under the Commerce Clause.**

The Commerce Clause vests Congress with the exclusive power to regulate interstate commerce among the states. *See* U.S. CONST. art. I, §8, cl. 3. To protect Congress's prerogative, the United States Supreme Court has "long held that [the Commerce Clause] also prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). In this regard, the Dormant Commerce Clause prohibits states "from adopting protectionist measures and thus preserves a national market for goods and services." *Id*.

The Unites States Supreme Court has invalidated coercive jurisdictional state laws under the Commerce Clause. In *Davis v. Farmers' Co-op. Equity Co.*, the Court unanimously struck down a Minnesota jurisdictional statute that required out-of-state railroad carriers to generally submit to suit in Minnesota as a "condition" of doing business there. 262 U.S. 312, 315–317 (1923). The Court held the statute imposed a "serious and unreasonable burden" on interstate commerce. *Id.* at 315. The statute impermissibly vested Minnesota courts with broad jurisdiction over suits "whatever the nature of the cause of action, wherever it may have arisen, and although the plaintiff is not, and never has been, a resident of the state." *Id.* It "unreasonably obstruct[ed]" and "unduly burden[ed]" interstate commerce. *Id.* And it exposed foreign carriers to potentially numerous, remote, and high-stakes personal-injury suits in Minnesota; engendered unpredictability; burdened carriers' employees with onerous and faraway litigation; and made costly disruptions to the carriers' wider operations inevitable. *Id*. at 315–316. The Court held that

8

by conditioning foreign carriers' business activity in Minnesota on forced consent to general jurisdiction, the statute's burdens on the carriers' broader commercial operations—and, by extension, interstate commerce—rendered it "obnoxious to the commerce clause."  *Id*. at 316.

The Registration Statute operates in virtually identical fashion, but with a more pervasive scope.  It subsumes *any* foreign company registered to do business in the Commonwealth, exposing them all to the panoply of burdens decried in *Davis*—geographically untethered and potentially crippling suits brought by out-of-state plaintiffs, tried by remote Pennsylvania trial courts, and heard by juries having no substantive connection to the litigation.  *See id.* at 316–317. Large foreign corporations will be hard-pressed to shoulder the burden, which will likely be borne even more heavily by small businesses.  Allowing Pennsylvania to force out-of-state defendants into its courts in this manner is an ongoing structural constitutional violation, form which a defendant has no remedy.

*Davis* remains controlling law and seals the Statute's fate.  *See Mallory*, 600 U.S. at 136 (observing that state courts cannot disregard Supreme Court decisions that have "direct application" to "state law and facts").  *See generally* John F. Preis, *The Dormant Commerce Clause As a Limit on Personal Jurisdiction*, 102 Iowa L. Rev. 121, 132 (2016) ("[*Davis*] [i]s one of many cases in which state and federal courts concluded that state assertions of personal jurisdiction will sometimes offend the Dormant Commerce Clause").

> **b.** **The Registration Statute fails to pass constitutional muster under prevailing Dormant Commerce Clause jurisprudence.**

The Registration Statute also runs afoul of the United States Supreme Court's more recent Dormant Commerce Clause jurisprudence.  As the Court recently reiterated, the Dormant Commerce Clause is the "primary safeguard against state Protectionism."  *Thomas*, 588 U.S. at 515; *see also Dep't of Revenue v. Davis*, 553 U.S. 328, 337–338 (2008) ("The … dormant

9

Commerce Clause … effectuate[s] the Framers' purpose to prevent a State from retreating into [] economic isolation[.]" (internal quotation marks omitted)); *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 205 (1994) ("[Protecting] local industry … from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits.").   Under firmly settled precedent, state law offends the Commerce Clause when it: (1) discriminates against interstate commerce; or (2) imposes "undue burdens" on interstate commerce. *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 173–174 (2018).  The Registration Statute flunks each test.

i.    **The Registration Statute discriminates against interstate commerce without legitimate justification.**

In practice, the Registration Statute imposes precisely the discriminatory, protectionist scheme that the Dormant Commerce Clause doctrine is intended to thwart.  By exposing foreign companies to costly and burdensome suits by foreign plaintiffs that bear no relation to any commercial dealings in Pennsylvania, the Statute discourages out-of-staters from doing business here and shelters domestic companies from the rigors of foreign competition in the Pennsylvania market.

State law discriminates against interstate commerce when it perpetuates "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Granholm v. Heald*, 544 U.S. 460, 472 (2005).  A seemingly neutral state law can discriminate against interstate commerce in practical effect.  *See*, *e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 350–351 (1977).  And state laws with discriminatory practical effects violate the Dormant Commerce Clause.  *Granholm*, 544 U.S. at 476; *see also Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986) (observing the Supreme Court has "generally struck down" without "further inquiry" statutes that, in effect, "favor in-state economic interests over out-of-state interests").

10

The Dormant Commerce Clause's insistence on a hard look at the practical effects of state regulation makes eminent sense—it forces a consideration of whether a statute, practically speaking, drives foreign companies from a state's economic fabric, and insulates domestic companies from healthy competition. Such a phenomenon undermines the Dormant Commerce Clause's anti-protectionist concerns and smacks of improper discrimination. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 372, 378 (2023) (holding state laws insulating in-state economic interests from outside competition discriminate against interstate commerce); Preis, *supra*, at 134–136 (explaining that the Dormant Commerce Clause prohibits states "from protecting local economic actors … by imposing extra costs or burdens on out-of-state actors," discriminating against interstate commerce by discouraging out-of-staters from pursuing business in state's market).

Pennsylvania's Registration Statute cannot withstand this scrutiny. It forces foreign companies to consent to categorical jurisdiction in distant Pennsylvania courts for any action whatsoever—regardless of their connection to Pennsylvania—as a condition of doing business in the Commonwealth. This unquestionably imposes a significant burden on all out-of-state businesses, *Bendix Autolite Corp. v. Midwesco Enters.*, 486 U.S. 888, 893 (1988), and perhaps an untenable choice: either subject themselves to liability exposure in increasingly oppressive fora for conduct wholly unrelated to activities in the Commonwealth, or decline to do business in the Commonwealth.

The effect is to discourage foreign companies of all sizes from doing business here, setting the stage for a large-scale retreat from Pennsylvania's market while protecting domestic businesses from foreign competition. This is textbook discrimination against interstate commerce. *See Mallory*, 600 U.S. at 161 & n.7 (Alito, J., concurring) ("Pennsylvania's law seems to discriminate

11

against out-of-state companies by forcing them to increase their exposure to suits on all claims in order to access Pennsylvania's market while Pennsylvania companies generally face no reciprocal burden for expanding operations into another State.").

As such, the Registration Statute's discriminatory effects invite invalidation under the Dormant Commerce Clause. *Granholm*, 544 U.S. at 476; *Brown-Forman*, 476 U.S. at 579  The Statute can resist this fate only if it is shown to "advance[] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988). This standard is "high," *id.*, and rarely satisfied, *see* Preis, *supra*, at 137; *see also Fulton Corp. v. Faulkner*, 516 U.S. 325, 345 (1996).

The Registration Statute crumbles under this scrutiny. The Statute does not purport to protect the health and safety of persons in the Commonwealth; to provide a reasonable, jurisdictionally grounded forum for redress to residents or nonresidents injured within Pennsylvania; or to safeguard the Commonwealth's economic health in non-protectionist fashion. *See Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 443 (1978); Preis, *supra*, at 137, 143. Rather, the Statute outstrips any such plausible interest by allowing nonresident plaintiffs to launch suits for injuries unrelated to Pennsylvania activity, precipitating a protectionist framework that short-circuits out-of-state competition. This is not a legitimate state interest. *See Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982) (holding states have "no legitimate interest in protecting nonresidents" injured out-of-state); Preis, *supra*, at 137; *Mallory*, 600 U.S. at 162–163 (Alito, J., concurring) ("I am hard-pressed to identify any *legitimate local* interest that is advanced by requiring an out-of-state company to defend a suit brought by an out-of-state plaintiff on claims wholly unconnected to the forum State."); *Mallory*, 600 U.S. at 169–170 & n.1 (Barrett, J., dissenting, joined by Roberts, C.J., and Kagan and Kavanaugh, JJ.) (observing Pennsylvania's

12

"blanket claim of authority over controversies with no connection to the Commonwealth" serves "no legitimate interest"); *Maine v. Taylor*, 477 U.S. 624, 148 (1986) ("Shielding in-state industries from out-of-state competition is almost never a legitimate local purpose[.]").

Consequently, "there is nothing to be weighed in the balance to sustain" the Registration Statute, *Edgar*, 457 U.S. at 644, and it cannot stand under the Dormant Commerce Clause.

ii.       **The Registration Statute also imposes undue burdens on interstate commerce that exceed local benefits.**

The Registration Statute wilts even further beneath the independent "undue burden" test of Dormant Commerce Clause jurisprudence. *Wayfair*, 585 U.S. at 173. A state regulation, even a nondiscriminatory one, offends the Dormant Commerce Clause and invites invalidation if it imposes "undue burdens" on interstate commerce. *Id*. The United States Supreme Court has long observed—including in *Mallory*—that coercive jurisdictional statutes unduly burden interstate commerce by forcing foreign companies to relinquish privileges they might otherwise retain while generally subjecting them to the myriad risks, costs, and disruptions that suits from forum-shopping plaintiffs in disconnected locales entail. *See*, *e.g.*, *Davis*, 262 U.S. at 315–317 (recognizing, as "matters of common knowledge," such "heavy" burdens as "serious and unreasonable" impositions on interstate commerce); *Bendix*, 486 U.S. at 893–895 (recognizing such burdens as "significant" impositions on interstate commerce and invalidating analogous jurisdictional statute that forced foreign companies to either submit to general personal jurisdiction in Ohio or relinquish critical defenses); *Mallory*, 600 U.S. at 161–162 (Alito, J., concurring) (recognizing Registration Statute imposes "significant burden" on interstate commerce by requiring foreign companies to defend against all suits, "including those with no forum connection").

13

In other words, this Court need not speculate on whether the Statute unduly burdens interstate commerce—this result already has been confirmed by the United States Supreme Court's own precedent. And because these undue burdens stand to land disproportionately on small foreign companies, their magnitude becomes all the more intolerable under the Dormant Commerce Clause. *Mallory*, 600 U.S. at 161–162 (Alito, J., concurring).

Once a regulation is shown to unduly burden interstate commerce, it can be salvaged only if it "effectuate[s] a legitimate local public interest" and its imposition on interstate commerce is not "clearly excessive in relation to" that interest. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). "If a legitimate local purpose is found, then the question becomes one of degree." *Id*. "And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id*.

The Registration Statute does none of this. With no legitimate interest undergirding the Statute, nothing weighs in favor of its constitutionality under the Dormant Commerce Clause. *Edgar*, 457 U.S. at 644. Moreover, the Statute's burdens far exceed any local benefits the Commonwealth might advance. *See Mallory*, 600 U.S. at 163 (Alito, J., concurring). They instead form the foundation for substantial harm to Pennsylvania's economic and administrative integrity. By discouraging thousands of foreign, predominately small companies from entering the Commonwealth, these burdens jeopardize a critical component of the state's economy.

Residual harms and inconveniences flow from these burdens. *See id.* at 162 (Alito, J., concurring) (noting some companies may "forgo registration altogether, preferring to risk the consequences rather than expand their exposure to general jurisdiction," and that the Registration Statute benefits neither corporations, which "must manage their added risk," nor plaintiffs, who

14

"face challenges in serving unregistered corporations").  And if other states were to pass legislation similar to the Statute, the cycle of burdens—and self-inflicted state harms—would presumably continue, essentially resulting in nationwide jurisdiction.

Maintaining the Registration Statute at the expense of foreign economic interests and the Commonwealth cannot pass constitutional muster.  Because the Statute casts undue burdens on interstate commerce with no legitimate justification, it should fall under the Dormant Commerce Clause.

## III.    CONCLUSION

For these reasons and those set forth in Sig Sauer's Motion, *Amici* respectfully request that this Court grant the Motion and, at minimum, amend and certify the Court's March 5, 2026 Order for interlocutory review.

Respectfully submitted,

BABST CALLAND, CLEMENTS AND ZOMNIR P.C.

*/s/ Casey Alan Coyle*
Casey Alan Coyle, Esquire
PA ID No. 307712
300 N. 2nd Street, Suite 801
Harrisburg, PA 17101
(717) 868-8377
ccoyle@babstcalland.com

Devlin E. Carey, Esquire
PA ID No. 332768
Two Gateway Cener, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5499
jschaeffer@babstcalland.com
*Counsel for Amici Curiae*

Dated: April 3, 2026

15

**<u>CERTIFICATE OF SERVICE</u>**

I, Casey Alan Coyle, certify that on this 3rd day of April, 2026, I electronically filed the foregoing MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE* using the Court's CM/ECF System, that all participants in this case are registered CM/ECF users, and that service will be accomplished by the CM/ECF System.


<u>/s/ Casey Alan Coyle</u>
Casey Alan Coyle