**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY BLADE, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | NO. 2:25-cv-06645-AMP |
| | : | |
| SIG SAUER, INC., | : | |
| Defendant. | : | |
| | : | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SEVER AND § 1404 TRANSFER OF THE NON-PENNSYLVANIA PLAINTIFFS

**REED SMITH LLP**

Stephen J. McConnell (80583)
Joseph J. Mahady (314149)
Mark W. Fidanza (320930)
Ryan Blake (326260)
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420
smcconnell@reedsmith.com
jmahady@reedsmith.com
mfidanza@reedsmith.com
rblake@reedsmith.com

**LITTLETON JOYCE UGHETTA & KELLY LLP**

Kristen E. Dennison (86648)
Justine Lara Shullick, Esquire (337510)
100 Matsonford Road, 4-520
Radnor, PA 19087
Tel: (484) 254-6220
Fax: (484) 254-6221
Kristen.Dennison@littletonjoyce.com
Justine.Shullick@littletonjoyce.com

Dated: November 10, 2026

*Attorneys for Defendant Sig Sauer, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. APPLICABLE LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

A. THE PRIVATE *JUMARA* FACTORS WEIGH IN FAVOR OF TRANSFER ........ 4

a. Plaintiff's Forum Preference is Afforded Minimal Weight When it is Not His or Her Home Jurisdiction ........ 4

b. SIG's Choice of Forum is Where the Incidents Occurred. ........ 5

c. The Third Jumara Factor – Where the Incidents Occurred – is Identical to the Second Factor ........ 5

d. The Convenience of the Parties Heavily Weighs in Favor of Transfer. ........ 6

e. The Convenience of the Witnesses Heavily Weighs in Favor of Transfer. ........ 6

f. The Location of Books and Records is a Neutral Factor. ........ 7

B. THE PUBLIC *JUMARA* FACTORS SUPPORT TRANSFER ........ 8

a. Practical Considerations Making Trial Expeditious Favor Transfer. ........ 8

b. The Risk of Court Congestion Weighs in Favor of Transfer. ........ 8

c. Local Interest in Local Controversies Favors Transfer ........ 9

d. The Familiarity of the Trial Judge with the Applicable Law Favors Transfer. ........ 9

e. The Enforceability of the Judgment and Public Policy Considerations are Neutral Factors. ........ 10

IV. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Electrolux Home Prods.*,
2018 WL 3707377 (E.D. Pa. Aug. 3, 2018) ....2, 3, 6

*In re Amkor Tech., Inc. Sec. Litig.*,
2006 WL 3857488 (E.D. Pa. Dec. 28, 2006) ....5

*Boles v. Eli Lilly & Co.*,
No. 1:15-CV-00351-JMS-DKL, 2015 WL 6132478 (S.D. Ind. Oct. 19, 2015) ....6

*Bolton v. Tesoro Petroleum Corp.*,
549 F. Supp. 1312 (E.D. Pa. 1982) ....9

*Campbell v. FMC Corp.*,
1992 U.S. Dist. LEXIS 10550 (E.D. Pa. July 17, 1992) ....5

*Claiborne v. FedEx Ground Package Sys., Inc.*,
2025 WL 2772339 (W.D. Pa. Sept. 29, 2025) ....5

*In re Consolidated Parlodel Litig.*,
22 F. Supp. 2d 320 (D.N.J. 1998) ....5, 7

*Copley v. Wyeth, Inc.*,
2009 WL 2160640 (E.D. Pa. July 17, 2009) ....2, 5, 7

*Dahl v. HEM Pharmaceuticals Corp.*,
867 F. Supp. 194 (S.D.N.Y. 1994) ....6

*In re E. Dist. Repetitive Stress Injury Litig.*,
850 F. Supp. 188 (E.D.N.Y. 1994) ....6, 7

*Greenberg v. Johnson Controls, Inc.*,
790 F. Supp. 3d 431 (E.D. Pa. 2025) ....5, 9

*High River Ltd. P'ship v. Mylan Labs., Inc.*,
353 F. Supp. 2d 487 (M.D. Pa. 2005) ....9

*Jumara v. State Farm Insurance Co.*,
55 F.3d 873 (3d Cir. 1995) ....3, 4, 8

*Kimmel v. Cavalry Portfolio Servs., LLC*,
747 F. Supp. 2d 427 (E.D. Pa. 2010) ....2

*LeJeune v. Bliss-Salem, Inc.*,
85 F.3d 1069 (3d Cir. 1996)....9

*Matt v. Baxter Healthcare Corp.*,
74 F. Supp. 2d 467 (E.D. Pa. 1999)....6

*In re Radmax, Ltd.*,
720 F.3d 285 (5th Cir. 2013) (per curiam)....8

*Rowels v. Hammermill Paper Co., Inc.*,
689 F. Supp. 494 (E.D. Pa. 1988)....4

*Seidman v. Hamilton Beach Brands, Inc.*,
787 F. Supp. 3d 25 (E.D. Pa. 2025)....5, 6

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)....2

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc)....9

*Zeevi v. Am. Home Prods. Corp.*,
2002 WL 92902 (E.D. Pa. Jan. 24, 2002)....4, 5, 7

**Statutes**

28 U.S.C. § 1391(b)(2)....3

28 U.S.C. § 1404....2, 3

28 U.S.C. § 1404(a)....2

**Other Authorities**

Fed. R. Civ. P. 1....8

Fed. R. Civ. P. 21....2

Rules 20....2

# I. INTRODUCTION

Plaintiffs and their counsel chose to file a case that is unwieldy, inconvenient, and prejudicial. There are 51 individual Plaintiffs, who assert claims arising from 31 alleged incidents, occurring in 20 different states asserting they were injured by unintentional discharges of Sig Sauer Inc. ("SIG") P320 pistols. Under any rational approach, there would be 31 separate cases, one for each incident. Plaintiffs' choice to cram these 31 disparate incidents into one action is made worse considering only 2 involve Pennsylvania citizens. Of those 2 Pennsylvania Plaintiffs, only 1 sustained their alleged injury in Pennsylvania. Even between the Pennsylvania resident Plaintiffs, the laws of different states would apply, and the Plaintiffs themselves (and their incidents) have almost nothing in common. *See* Def. Mot. to Sever (D.E. 85). The differences are so stark that even Plaintiffs did not oppose severing those two trials. *See* (D.E. 88). In fact, not only has no P320 case ever been tried in a jurisdiction other than where the incident occurred, but the only P320 cases even pending outside the jurisdiction of where the plaintiff's incident occurred are currently pending in New Hampshire, where Defendant is headquartered. Plaintiffs' choice of forum is unprecedented. These distinctions matter in terms of convenience, court management, and prejudice to SIG. There is no justification for cobbling together one vast, illogical case consisting of 31 separate cases from 28 separate jurisdictions, with at least 20 different state's laws applying to the issue of liability[1]. If there is any convenience associated with this crazy quilt complaint, it redounds to the benefit of only plaintiffs' counsel and nobody else.

The unwieldy and sprawling nature of Plaintiffs' filing has led to protracted discovery disputes and delayed discovery into the 23 non-bellwether cases, where very little has occurred since the filing of the Complaint. Under Third Circuit law governing joinder, severance, and

[1] *See* Exhibit A (Chart showing each main Plaintiff's state of residence and incident location).

transfer under 28 U.S.C. § 1404, this case is extraordinarily inconvenient under both private and public factors, and necessarily warrants severance, dismissals, and/or transfers of the Plaintiffs' claims relating to each discrete incident to a different jurisdiction. Only then can these claims, arising from 31 disparate incidents, be tried fairly and expeditiously.

## II. <u>APPLICABLE LEGAL STANDARD</u>

In multi-plaintiff actions where the Court is asked to transfer each individual case to separate jurisdictions, the Court must first sever each individual Plaintiff under Rules 20 or 21 prior to dismissing for lack of jurisdiction, or transferring pursuant to 28 U.S.C. § 1404. *See, e.g., Allstate Ins. Co. v. Electrolux Home Prods*., 2018 WL 3707377 (E.D. Pa. Aug. 3, 2018). As set forth in SIG's Motion to Sever (D.E. 85), severance of the individual cases is appropriate for many of the same reasons that transfer is appropriate; namely, the laws of many different states apply, the witnesses are located exclusively in other jurisdictions, the incidents arose in other jurisdictions, there is no connection to this forum, and SIG would be irreparably prejudiced if the cases are not severed and transferred. *See, e.g., Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 434-35 and n.7 (E.D. Pa. 2010).

The Court may transfer "[f]or the convenience of parties and witnesses, in the interest of justice" to "any other district or division where [the case] might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Indeed, the Court may transfer an action to a different district *sua sponte*, if the transferee court would have had jurisdiction originally. *Allstate Ins. Co.*, 2018 WL 3707377 at *8. District courts have "broad discretion" to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Copley v. Wyeth, Inc.*, 2009 WL 2160640, at *1 (E.D. Pa. July 17, 2009) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (additional citations and quotations omitted). The non-Pennsylvania Plaintiffs' original actions could have

been brought originally in New Hampshire (where Defendant is located) or in the jurisdictions where their incidents occurred; therefore, the focus shifts to whether transfer is appropriate in the interests of convenience and justice. *See* 28 U.S.C. § 1391(b)(2) (action may be brought in "a judicial district in which a substantial part of the events [] giving rise to the claim occurred…").

In the Third Circuit, motions to transfer under § 1404 are governed by *Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995), which sets out twelve factors courts should consider in adjudicating such a motion – six "public" factors and six "private" factors. The private factors relate to the "convenience of the parties and witnesses" and are: (1) plaintiff's forum preference; (2) defendant's preference; (3) where the claims arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records. *Jumara*, 55 F.3d 873 at 878-9, 883. The public factors relate to the "interests of justice" and include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) administrative difficulty between the fora resulting from court congestion; (4) local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-880. These factors weigh heavily in favor of transferring the non-Pennsylvania Plaintiffs to their home jurisdictions, or to New Hampshire, where SIG is "at home" for jurisdictional purposes.

## III. <u>ARGUMENT</u>

In *Allstate Ins. Co.*, this Court determined that allowing eighty-six claims to continue as a single action under the laws of twenty-one different states "on complex doctrines such as products liability and negligence" would "not facilitate judicial economy, nor would it facilitate justice." 2018 WL 3707377. at *7 ("attempting to charge a jury on the substantive laws of twenty-one states

and requiring the jury to compartmentalize the evidence and substantive law as it pertains to each of the eighty-six claims is nothing short of an insurmountable task."). For those reasons, the Court severed, and dismissed the individual plaintiffs over which it no longer had jurisdiction[2], and transferred the remainder of the plaintiffs to their home jurisdictions under *Jumara*. *Id.* at *7-9.

Here, an examination of all the private and public *Jumara* factors makes clear that severance and ***transfer*** of the non-Pennsylvania Plaintiffs is warranted. SIG does not suggest the factors are a simple math problem, as some factors should no doubt be weighed more heavily than others, but as discussed below, it is apparent that under *Jumara* and its progeny, the non-Pennsylvania Plaintiffs' cases should be transferred. Eight factors favor transfer, three are neutral, and one factor (which is given minimal, if any, weight) weighs against transfer.

## A. THE PRIVATE *JUMARA* FACTORS WEIGH IN FAVOR OF TRANSFER

### ***a. Plaintiff's Forum Preference is Afforded Minimal Weight When it is Not His or Her Home Jurisdiction.***

Plaintiffs will no doubt argue that their choice of forum is paramount – but this is simply not the law when the operative facts occurred outside the forum, and Plaintiffs do not reside here. *See, e.g., Rowels v. Hammermill Paper Co., Inc.*, 689 F. Supp. 494, 496 (E.D. Pa. 1988) ("[a] plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum."). That lessened deference is even "**further reduced**" where the lawsuit is (as here) "initiated outside the forum in which the Plaintiff is a resident." *Zeevi v. Am. Home Prods. Corp.*, 2002 WL 92902, at *1 (E.D. Pa. Jan. 24, 2002) (emphasis added).

Moreover, this Court has repeatedly, and recently, transferred cases where this forum had "no nexus to the facts at all" and noted that the plaintiff's forum choice is "substantially weakened"

---

[2] The Court found that the amount in controversy was not met, and therefore dismissed. *Id.* Here, SIG presumes the Court will deem the amounts in controversy met for each individual Plaintiff.

where all operative facts occurred elsewhere. *Seidman v. Hamilton Beach Brands, Inc.*, 787 F. Supp. 3d 25, 36 (E.D. Pa. 2025); *Greenberg v. Johnson Controls, Inc.*, 790 F. Supp. 3d 431, 442 (E.D. Pa. 2025). Some courts in this Circuit have gone so far as to ascribe "at most, neutral" weight to this factor under these circumstances. *See, e.g., Claiborne v. FedEx Ground Package Sys., Inc.*, 2025 WL 2772339, *7 (W.D. Pa. Sept. 29, 2025). If the Court does not consider this factor to be neutral, it must contribute a mere feather's weight to the scale opposing transfer.

***b. SIG's Choice of Forum is Where the Incidents Occurred.***

SIG's choice of venue is the one "typically [deemed] the most appropriate" – "where a majority of events giving rise to the claim arose." *Copley*, 2009 WL 2160640, at *4 (quoting *In re Amkor Tech., Inc. Sec. Litig.*, 2006 WL 3857488 (E.D. Pa. Dec. 28, 2006)). In other words, SIG's choice of venue is to litigate these cases in the states in which the alleged incident occurred. This factor weighs in favor of transfer.

***c. The Third Jumara Factor – Where the Incidents Occurred – is Identical to the Second Factor.***

In products liability cases, claims typically "arise" in the plaintiff's home district, where the incident occurred; as such, this factor is weighted heavily and often results in transfer when initial litigation is brought elsewhere. *See, e.g., Copley*, 2009 WL 2160640, at *4 (citing *Zeevi*, 2002 U.S. Dist. LEXIS 1095, at *6-7) (transferring action to where the plaintiff lived, was administered product at issue, suffered her injuries, and was treated); *In re Consolidated Parlodel Litig.*, 22 F. Supp. 2d 320, 326 (D.N.J. 1998) ("Although Parlodel was designed and manufactured in New Jersey, and [the pharmaceutical company] made various decisions in New Jersey, Parlodel was marketed and consumed by Plaintiffs in their home districts. Thus, it appears as though these claims arose in Plaintiffs home districts."); C*ampbell v. FMC Corp.*, 1992 U.S. Dist. LEXIS 10550, at *7 (E.D. Pa. July 17, 1992) (transferring products liability action to place where allegedly

defective product was used and injury occurred because that was where the "operative facts" occurred); *Dahl v. HEM Pharmaceuticals Corp*., 867 F. Supp. 194 (S.D.N.Y. 1994) (transferring case to where drugs were administered); *see also Allstate Ins. Co.*, 2018 WL 3707377 at *8 (transferring cases to home jurisdictions where allegedly defective dryers caught fire). This factor weighs in favor of transfer.

***d. The Convenience of the Parties Heavily Weighs in Favor of Transfer.***

Put simply, these trials would be more convenient, economical, and efficient for Plaintiffs if they did not need to travel outside their home jurisdictions where they live, work, and to the extent necessary continue to receive medical care. This forum is no more or less convenient to SIG than any other, and the convenience of Plaintiffs' counsel is irrelevant. *Matt v. Baxter Healthcare Corp.*, 74 F. Supp. 2d 467 (E.D. Pa. 1999); *see also Boles v. Eli Lilly & Co.*, No. 1:15-CV-00351-JMS-DKL, 2015 WL 6132478, at *10 (S.D. Ind. Oct. 19, 2015) ("[r]ather than convenience to counsel, the Court is concerned with effectively and efficiently resolving each litigant's controversy."). This factor militates towards transfer.

***e. The Convenience of the Witnesses Heavily Weighs in Favor of Transfer.***

The convenience of witnesses has previously been described as the "most powerful factor." *In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994). Courts have described consolidated matters with little connection to the forum as improper "de facto multidistrict consolidation." *Id.*; *see also Baxter Healthcare Corp.*, 74 F. Supp. 2d at 469 (transferring where most key witnesses and relevant events were in the transferee district); *Hamilton Beach Brands, Inc.*, 787 F. Supp. 3d at 38 (transferring products liability plaintiffs to their home districts). Here, based on bellwether discovery, nearly all key witnesses for the non-

Pennsylvania Plaintiffs are outside the subpoena power of this Court,[3] leaving SIG both indescribably prejudiced and left with, in some cases, no ability to compel live trial testimony. Any witness's willingness to travel does not cure this issue. "Even if witnesses were willing to testify, the long-distance travel required could impede trial in this district and would impose substantial expense on witnesses or the parties calling them." *In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994). Nor would SIG likely be able to obtain the voluntary attendance of witnesses, given the travel and inconvenience involved. Further, to the extent non-party witnesses were willing to appear, facilitating the travel of those witnesses to Pennsylvania would still be far more costly and inconvenient than if the cases were litigated where the incidents occurred. Similarly, arguments that critical witnesses could simply be presented by videotaped deposition are uncompelling, as video is "not the equivalent of live testimony," and would be inefficient. *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 324 (D.N.J. 1998) (granting transfer of fourteen products liability cases where treating physicians were located outside the subpoena power of the court); *Copley*, 2009 WL 2160640 at *5 ("the inability of a court to compel the live testimony of critical witnesses at trial suggests that transfer is appropriate") (citing *Zeevi*, 2002 WL 92902, at *6-7). Put simply, there are no witnesses or evidence in Pennsylvania, as nothing relevant to any of these cases occurred here. This factor – the most powerful factor – strongly favors transfer.

***f. The Location of Books and Records is a Neutral Factor.***

While the location of books and records is a factor that has largely been de-emphasized in light of the ubiquitousness of electronic discovery and record-keeping, it is notable that the question is "***relative*** ease of access" such that when evidence is located in one place, to the extent

[3] *See* Exhibit B (list of key witnesses for each Plaintiff for whom discovery has been conducted).

***any*** of it is hard copy or otherwise easier to access from that forum than Pennsylvania, this factor would weigh in favor of transfer. *In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) (per curiam) (ordering transfer where witnesses and evidence were in transferee forum) (emph. added). This factor is either neutral or slightly leans to transfer.

### B. THE PUBLIC *JUMARA* FACTORS SUPPORT TRANSFER

#### ***a. Practical Considerations Making Trial Expeditious Favor Transfer.***

Plaintiffs' choice to aggregate largely unrelated claims in this forum led to slowed discovery and multiple delays, particularly as it relates to the non-bellwether Plaintiffs. Keeping these cases in Pennsylvania will necessarily result in delayed trials for at least some Plaintiffs who must wait for more than twenty cases to proceed ahead of them. That outcome in no way promotes "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Transfer, however, allows these claims to be litigated in the jurisdiction where the evidence is the most accessible and where the different courts can streamline proceedings according to the specific facts of each incident, and set cases for trial far more expediently.

#### ***b. The Risk of Court Congestion Weighs in Favor of Transfer.***

The relative congestion of the courts in the Plaintiffs' home districts as compared to the Eastern District of Pennsylvania shows that a majority of the districts are less congested than this Court. *See* Selected Pages from Federal Judicial Caseload Statistics - Profiles June 2026 Table.[4] This Court had almost 12,000 cases pending as of June 2026. Only a handful of jurisdictions to which these cases would be transferred boast numbers that exceed this Court. *Id.* Far more transferee courts – such as those in Iowa, Nebraska, Michigan, and Oklahoma, have fewer than

[4] Exhibit C. Last accessed on November 10, 2026.

***half*** that amount. *Id.* Ultimately, the most pressing congestion would occur via Plaintiffs asking this Court to try more than thirty unrelated products liability actions to which it has no connection.

Even if this Court had a less congested docket than each transferee court, that factor alone would not justify declining to transfer, as it would "invite forum shopping." *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 499 (M.D. Pa. 2005). This factor favors transfer.

***c. Local Interest in Local Controversies Favors Transfer.***

It should go without saying that – just as Pennsylvania has an interest in protecting its residents – so, too, do the various jurisdictions that encompass these Plaintiffs' home states. Pennsylvania has, quite literally, no interest in litigating the claims of out-of-forum residents against an out-of-forum Defendant for incidents that occurred out of forum, and this Court has recently opined that jury duty "ought not to be imposed upon the people of a community which has no relation to the litigation." *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312 (E.D. Pa. 1982). The fact that the P320 has been sold in Pennsylvania is an insufficient local interest as it "could apply virtually to any judicial district" for most any nationwide product. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (en banc).[5] This factor strongly favors transfer.

***d. The Familiarity of the Trial Judge with the Applicable Law Favors Transfer.***

The choice of law principles of this Circuit typically result in the application of the law of the place of incident in products liability litigation. D.E. 85 at 17 (citing *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)). Therefore, transferring cases back to their home jurisdictions will result in trial judges being able to apply the law of their home courts – with which

[5] The "national nature" of disputes has recently been found by this Court to be additional support for transfer to jurisdictions where an action could have otherwise been brought, ***even where there was a competing public interest in deciding a local controversy in Pennsylvania*** that does not exist here. *Greenberg*, 790 F. Supp. 3d 431.

they will likely be far more familiar – as opposed to asking this Court to apply the laws of twenty different states across more than thirty cases. This factor militates in favor of transfer.

***e. The Enforceability of the Judgment and Public Policy Considerations are Neutral Factors.***

There is no reason to believe that a judgment would be more or less easily enforced in Pennsylvania as opposed to a transferee court. Likewise, SIG identified no relevant public policy that favored these cases remaining in Pennsylvania. While there is certainly public policy in every transferee court of litigating claims involving its residents injured in its state, by products sold in its state, that policy is sufficiently covered by other factors. Therefore, conservatively, four public factors weigh heavily in favor of transfer, with two factors being neutral.

## IV. CONCLUSION

Plaintiffs chose to bring a lawsuit in a forum with a connection to only ***2 out of 51*** Plaintiffs. This exercise in forum-shopping has resulted in the inartful and seemingly haphazard combination of 31 separate incidents that would require the application of the laws of no fewer than 20 different states. The incidents involve critical eyewitnesses and treating physicians spread across the country, well beyond the subpoena power of this Court. Some incidents involve ICE officers who did not select the P320, while others involve civilians who purchased the P320 with little prior firearms experience. Some involve serious alleged injuries while others involve graze wounds where the Plaintiff returned to work the next day. Some Plaintiffs insist nothing touched the trigger, while others blame clothing or foreign objects. Moreover, consolidation has slowed discovery, as investigations into 23 of the 31 incidents remain in limbo with undeveloped discovery records, despite having been in litigation for over a year. Transfer will avoid the incurable prejudice to SIG that would inhere should trials and evidence be combined. SIG respectfully requests this Court grant its motion to sever and dismiss or transfer these cases.

Respectfully Submitted,

**REED SMITH LLP**

*/s/ Stephen J. McConnell*
Stephen J. McConnell (80583)
Joseph J. Mahady (314149)
Mark W. Fidanza (320930)
Ryan K. Blake (326260)
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420
smcconnell@reedsmith.com
jmahady@reedsmith.com
mfidanza@reedsmith.com
rblake@reedsmith.com

**LITTLETON JOYCE UGHETTA & KELLY LLP**

Kristen E. Dennison (86648)
Justine Lara Shullick, Esquire (337510)
100 Matsonford Road, 4-520
Radnor, PA 19087
Tel: (484) 254-6220
Fax: (484) 254-6221
Kristen.Dennison@littletonjoyce.com
Justine.Shullick@littletonjoyce.com

*Attorneys for Defendant Sig Sauer, Inc.*

Dated: November 10, 2026